## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | **Chapter 13** |
| LESLIE E. THOMAS, | : | |
| Debtor. | : | **Case No. 07-16445(JKF)** |
| ——————————————————— | | |
| LESLIE E. THOMAS, | : | |
| Plaintiff, | : | |
| v. | : | |
| WELLS FARGO BANK, N.A. et al., | : | **Adversary No. 08-0030** |
| Defendants. | : | |
| ——————————————————— | | |

# MEMORANDUM OPINION

**BY:   JEAN K. FITZSIMON**
**United States Bankruptcy Judge**

Before the court is the motion ("Motion") of defendant, Wells Fargo Bank, N.A.,

(successor by merger to Wells Fargo Bank Minnesota, N.A., f/k/a Norwest Bank

Minnesota, N.A., as Trustee for Home Equity Loan Asset Backed Certificates, Series

2002-1) ("Wells Fargo"), pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P.

12(b)(6), to dismiss Counts II, through VII of the Complaint of plaintiff/debtor, Leslie E.

Thomas ("Debtor").[1]   A hearing was held on the Motion and the matter was taken under

---

[1]  In the Motion, Wells Fargo also sought the dismissal of Count I (seeking  bifurcation of
(continued...)

advisement.  Upon consideration, the Motion shall be granted in part and denied in part.

Count III of the Complaint shall be dismissed in its entirety; Counts IV and VI shall be

dismissed as against Wells Fargo.


## BACKGROUND[2]

_____Debtor, who is 32 years old, resides at 5748-50 Samson Street in Philadelphia,

Pennsylvania (the "Property").  Complaint ¶ 5.  She inherited the Property from her

father and recorded the deed to it in her name on September 27, 2000.  Id. ¶ 10.

Debtor suffers from various health problems and is legally blind.  Id.

In November of 2001, Andrew Rosen, a mortgage broker for Security Mortgage

Broker ("SMB"), was soliciting individuals interested in obtaining home improvement

loans.  Id. ¶ 11.  He talked to Debtor about her need for home repairs and offered to

help her secure financing for the repairs.  Id. ¶ 13.  Debtor was interested in obtaining a

loan of $5,000 for home repairs.  Id. ¶ 12.

Rosen advised Debtor that he could only arrange a mortgage loan to cover the

cost of her home repairs if she employed the home improvement contractor whom he

recommended and also agreed to refinance her outstanding water and tax bills as part

---

[1](...continued)
Wells Fargo's claim), but agreed at the hearing on the matter that its objection to Count I
related to the manner in which Debtor had couched her prayer for relief and not to the
substance of Count I itself.

[2]  The facts set forth in the "Background" section above are based on the factual
allegations contained in the Complaint.  The factual allegations of the Complaint have been
accepted as true and all reasonable factual inferences therefrom have been  viewed in the light
most favorable to the plaintiff as is required in ruling upon a motion to dismiss pursuant to Rule
12(b)(6).  See text at pg. 8 (discussing "Standard of Review").

of the loan.  Id. ¶ 13.  Debtor advised Rosen that she wasn't interested in a loan on those terms.  Id. ¶ 14.

Approximately a week later, Rosen returned with a second offer.  He told Debtor that she could get a loan without any restriction on whom she used as a contractor.  Id. ¶ 15.  As a result of this change, Debtor advised Rosen that she was interested in obtaining a loan for $15,000.  Id. ¶ 16.  Ideally, the loan was intended to provide Debtor with $5,000 for home repairs and $10,000 to cover the costs of her outstanding water and tax bills which Rosen convinced her needed to be paid as soon as possible.  Id. Unbeknownst to Debtor, it was disadvantageous for her to consolidate the water and tax bills in her loan because she had arranged repayment plans for them.  Id. ¶ 17. Rosen never informed Debtor of this fact.  Id.

During this second meeting with Rosen, Debtor advised him that she was interested in obtaining a loan with an interest rate of 6% and indicated that, under no circumstances, would she agree to a loan with an interest rate higher than 8%.  Id. ¶ 18. Rosen told Debtor that he could not arrange a mortgage loan for $15,0000 at that kind of rate.  Id. ¶ 19.

In December of 2001, Rosen contacted Debtor yet again, this time by telephone. Despite knowing that Debtor only wanted $5,000 to do home repairs, he offered her a $30,000 loan with an interest rate between 6-8%, a term of 15 years and monthly payments of approximately $400 per month.  Id. ¶ 21.  Debtor rejected the offer because the monthly payments were too high.  Id. ¶ 22.  Rosen then offered to stretch the loan out to a term of 30 years, telling her that by doing so, her monthly payments would be reduced to $265.  Id. ¶ 23.  Assuming that Rosen was offering her a loan with

3

an interest rate between 6-8%, Debtor told Rosen that she would agree to a loan on those terms.  Id. ¶ 24.  Rosen informed Debtor that, to qualify for the loan, she would have to provide proof of income above the $579 which she received in social security disability payments.  Id. ¶ 25.  Since she sometimes earned money by babysitting for her neighbors, Rosen suggested that she obtain a letter from a neighbor indicating that she made steady income as a babysitter.  Id.  Debtor did so and provided the letter to Rosen.  Id.

Thereafter, Rosen submitted a loan application for Debtor to Delta Funding Corporation ("Delta"); interestingly, he never asked Debtor to review the application.  Id. ¶ 26.  The application listed Debtor's social security income at the inflated amount of $715 instead of the $579 which she received.  Id. ¶¶ 25-26.

On February 7, 2002, the closing on Debtor's loan was held.  Id. ¶¶ 27-28. Debtor's mother, Anne Thomas ("Mom"), attended the closing with her daughter.  Id. ¶ 29.  The lender's closing agent, Capital Assurance Group, Inc. ("Capital"), through its attorney, Murray Levin ("Levin") of Levin & Associates, LLC ("Levin Law Firm"), presented the loan documents to Debtor.  Id. ¶ 27.

At the closing, Debtor's Mom asked whether the loan being offered to her daughter was a predatory loan.  Id. ¶ 29.  Levin assured her and Debtor that: (1) he was an attorney and was there to protect Debtor's interest; and (2) the loan was not predatory.  Id. ¶ 30.  Because of Debtor's poor eyesight, she relied throughout the closing on Rosen and Levin to accurately explain the terms of the loan documents which she was executing.  Id. ¶ 31.

4

The loan which Debtor received from Delta was in the principal amount of $31,500 with an interest rate of 13.19%, payable over 30 years with monthly payments of $353.14.  Id. ¶ 32. Debtor did not learn of the terms of this loan until the closing.  Id. ¶ 34.  The higher principal balance, higher monthly payment and higher interest rate of the loan all differed from the terms of the loan upon which she and Rosen had agreed. Id.  When Debtor objected to these new terms, Rosen represented to her that the terms were necessary in order to qualify her for the loan and that the monthly payments and interest rate would decrease automatically if she made timely payments for one year. Id. ¶¶ 35-36.

Included in the loan was a broker fee of $1,160 as well as a "yield spread premium" of $360.  Id. ¶ 37.  Delta paid the yield spread premium to Rosen as a reward for finding a borrower who would agree to a rate above that at which the borrower qualified.  Id.  During the closing, neither Rosen nor Levin advised Debtor of the existence of the yield spread premium; in addition, neither of them explained to her the purpose of the broker fee.  Id. ¶ 38.

At the closing, Debtor's Mom expressed doubts about the loan and urged her daughter to reconsider the need for entering into the mortgage transaction.  Id. ¶ 39. However, Rosen pressured Debtor to make a decision on her own, insisting that the terms of the loan were beneficial to her.  Id.

Both Rosen and Levin knew or should have known that Debtor, who had a monthly income of $579, could not repay a mortgage with monthly payments of $353 (exclusive of real estate taxes and homeowners insurance).  Id. ¶ 40.  Rosen and Levin failed to inform Debtor that she could not afford the mortgage terms, that it was not in

5

her interest to consummate the loan and that she could face the loss of her home in

foreclosure if the monthly payments were not made.  Id.  Debtor reasonably relied upon

the explicit and implicit assurances of Rosen and Levin that the mortgage transaction

was reasonable and suitable for her.  Id. ¶ 41.  Had she been informed of the risks

which she was taking, she would not have entered into the transaction.  Id.

Based on the terms of the mortgage, the mortgagee has a security interest in the

Property as well as in personal property belonging to the Debtor.  Id. ¶ 49.  The

mortgage states that the security interest includes but is not limited to "stoves,

refrigerators, washers, dryers, dishwashers, ovens, air conditioning units."  Id.

The disclosures which Delta provided to Debtor improperly included settlement

charges which should have been included in the "Prepaid Finance Charges" or in the

"Points and Fees" rather than in the "Amount Financed."  Id. ¶ 55.  As a result of the

improper classifications, the "Amount Financed," "Financed Charge" and "Annual

Percentage Rate" were stated incorrectly.  Id.  Had the settlement charges been

properly classified, the loan would have been readily identifiable as a high cost loan

under the Home Ownership and Equity Protection Act ("HEOPA") within the meaning of

15 U.S.C. § 1602(aa).  Id. ¶ 56.  By extending a HOEPA loan to Debtor, Delta was

obligated to provide Debtor with additional, pre-closing disclosures which it failed to do.

Id.

On June 3, 2002, the mortgage was assigned to Wells Fargo.  Id. ¶ 46.  On

October 31, 2003, Debtor provided written notice that she was exercising her right to

rescind the mortgage.  <u>Id</u>. ¶ 66.[3]  On December 11, 2003, Wells Fargo replied, refusing

Debtor's rescission demand.  <u>Id</u>. ¶ 67.

On November 2, 2007, Debtor filed her Chapter 13 bankruptcy case.  Docket

Entry #1 in <u>In re Thomas</u>, Bankruptcy Case No. 07-16445.  Wells Fargo, through its

designated agent Ocwen, filed a proof of claim (Claim #1) in Debtor's bankruptcy case

indicating that Wells Fargo has a secured claim in the amount of $60,879.39.  <u>Id</u>. ¶ 47.

On February 1, 2008, Debtor commenced this adversary proceeding by filing the

Complaint against four defendants, namely SMB (the mortgage broker), Capital (the

lender's closing agent), Levin & Associates (the closing agent's law firm), and Wells

Fargo.  The Complaint contains the following seven counts: Count I (strip down of Wells

Fargo's lien on the Property pursuant to 11 U.S.C. § 506(a)); Count II (recoupment of

statutory damages and award of costs of litigation, including attorney's fee, under

TILA); Count III (rescission of the loan under TILA); Count IV (fraud and/or unfair trade

practices by Security Mortgage and its agents); Count V (fraud and/or unfair trade

practices by Capital and its agents); Count VI (breach of confidential relationship by

Security Mortgage and its agents) and Count VII (breach of confidential relationship by

Capital and its agents).  As noted above, Wells Fargo moves to dismiss Counts II

through VII.

---

[3]  Paragraph 66 of the Complaint states, in conclusory fashion: "On October 31, 2003,
within three years of the transaction, Leslie Thomas did in fact rescind the mortgage."  The
parties expand on this allegation in their briefs, explaining that Debtor sent a written notice of
rescission to the servicer of her mortgage on October 31, 2003.  <u>See</u> Wells Fargo's Brief in
Support of Motion to Dismiss ("Wells Fargo's Brief") at 3; Plaintiff's Memorandum of Law in
Opposition to the Motion of Defendant Wells Fargo Bank's to Dismiss the Complaint ("Debtor's
Opposing Brief") at 5.

## DISCUSSION

### I.  Standard of Review

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may consider the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.  Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The court must accept the factual allegations in the complaint as true,  Erickson v. Pardus, ___ U.S. ___, ___, 127 S.Ct. 2197, 2200 (2007), and view all reasonable factual inferences in the light most favorable to the plaintiff, Angelastro v. Purdential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  However, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse v. Lower Merion School District, 132 F.3d 902, 906 (1997). "Dismissal is warranted if the allegations of a complaint are not 'enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"  Access Insurance Holdings, Inc. v. Lincoln General Insurance Company, 2008 WL 859222, at *1 (E.D. Pa. March 28, 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted)).

### II.  Whether Debtor's claim in Count II should be dismissed for failure to state a claim?

In Count II, Debtor seeks to: (i) recoup statutory damages against Wells Fargo, as the assignee of Delta, pursuant to § 1640(a)(4) of TILA which imposes liability for

HOEPA violations; and (ii) recover attorney's fees pursuant to TILA § 1640(a)(3).  Wells

Fargo contends that Count II should be dismissed because the standard for imposing

assignee liability against it cannot be met.


### *What is TILA?*

Congress enacted TILA in 1969 to "strengthen the national economy by

enhancing the informed use of credit."  Riethman v. Berry, 287 F.3d 274, 279 (3d Cir.

2002).  See also 15 U.S.C. § 1601(a) ("It is the purpose of [TILA] to assure a

meaningful disclosure of credit terms so that the consumer will be able to compare

more readily the various credit terms available to him and avoid the uninformed use of

credit[.]").  The statute is designed to put "the consumer on an equal footing with the

lender."  Milledge v. Chase Bank, 2007 WL 4179847, at *2 (E.D. Pa. Nov. 26, 2007).

To this end, TILA "requires a series of disclosures that must be made before the

consummation (the point at which legal obligations attach) of the underlying credit

agreement[.]"  Rossman v. Fleet Bank (R.I.) National Association, 280 F.3d 384, 389

(3d Cir. 2002).

Congress delegated the task of "prescrib[ing] regulations to carry out the

purposes of" TILA to the Federal Reserve Board (the "Board").  15 U.S.C. § 1604(a).  In

response, the Board promulgated "Regulation Z," 12 C.F.R. Pt. 226, and issued

extensive "Official Staff Interpretations," 12 C.F.R. Pt. 226 Supp. I.  Id.  The Third

Circuit has stated that "[i]n light of Congress' explicit delegation of authority to the

Board," courts should "defer quite broadly to the Board's interpretation."  Roberts v.

Fleet Bank, 342 F.3d 260, 265 (3d Cir. 2003).

9

### *What is HOEPA?*

HOEPA was enacted as an amendment to TILA "to address predatory lending practices targeted at vulnerable consumers."  Eugene Kelly, Jr. et al., *An Overview of HOEPA, Old and New,* 59 Consumer Fin. L.Q. Rep. 203 (Fall, 2005) [hereinafter "*An Overview of HOEPA"].*  It created "a special class of regulated loans that are made at higher interest rates or with excessive costs and fees."  In re Community Bank of Northern Virginia, 418 F.3d 277, 304 (3d Cir. 2005).  Loans within the scope of HEOPA ("HOEPA loans") are subject to more "stringent disclosure requirements," *An Overview of HOEPA* at 203.  See also Ross v. Citifinancial Mortgage Co., Inc. (In re Ross), 338 B.R. 266, 270 (Bankr. E.D. Pa. 2006) (noting that additional disclosures beyond those generally required by TILA must be provided for HOEPA mortgages).  Under HOEPA, material disclosures must be given "not less than three business days" prior to the transaction's consummation.  15 U.S.C. § 1639(b)(1).

### *Debtor's claim in Count II and*
### *Wells Fargo's argument for its dismissal.*

In Count II, Debtor alleges that: (1) the disclosures which Delta provided contained material violations of TILA regarding the allocation of settlement charges that were improperly included in the Amount Financed rather than in the Prepaid Finance Charges or in the Points and Fees; (2) as a result of these improper classifications of settlement charges, the disclosed Amount Financed, Finance Charges and Annual Percentage Rate were incorrectly stated; and (3) a proper classification of the charges would have revealed that the loan to Debtor was a high cost loan under HOEPA which

obligated Delta to provide additional, pre-closing disclosures to her in connection with

the loan, including specific HOEPA disclosures at least three days in advance of the

loan closing on February 7, 2002.  See 15 U.S.C. § 1639.  Pursuant to 11 U.S.C.

§ 1640(a)(4), Debtor seeks to recoup statutory damages against Wells Fargo, as

Delta's assignee, based on Delta's failure to comply with the disclosure requirements of

§ 1639 and to recover an award of attorney's fees and costs.

Wells Fargo argues that Count II should be dismissed because it was not the

originating lender of the transaction at issue and, therefore, is not a creditor within the

meaning of 15 U.S.C. § 1640.  See Motion ¶ 7.  Debtor concedes that Wells Fargo is

not a creditor for purposes of § 1640, but argues that Wells Fargo can still be held liable

as an assignee under § 1641(d)(1).


***Assignee liability for HOEPA mortgages.***

Pursuant to 15 U.S.C. § 1641(d)(1), assignees of HOEPA mortgages are subject

to a more expansive standard of liability than assignees have under under TILA.

Section 1641(d)(1) states, in pertinent part:

> Any person who purchases or is otherwise assigned a
> mortgage within referred to in section 1602(aa) of this title
> [referring to mortgages covered by HOEPA] shall be subject
> to all claims and defenses with respect to that mortgage that
> the consumer could assert against the creditor of the
> mortgage, unless the purchaser or assignee demonstrates,
> by a preponderance of the evidence, that a reasonable
> person exercising ordinary due diligence, could not
> determine, based on the documentation required by this
> subchapter, the itemization of the amount financed, and
> other disclosure of disbursements that the mortgage was a
> mortgage referred to in section 1602(aa) of this title.

15 U.S.C. § 1641(d)(1).  Under this provision, an assignee of a HOEPA mortgage is
subject to "all claims and defenses" which a consumer could assert against the creditor
of the mortgage unless a reasonable person exercising due diligence could not have
determined that the mortgage was subject to HOEPA by reviewing the following items:
(i) the documentation required by TILA; (ii) the itemization of the amount financed; and
(iii) other disclosure disbursements.[4]   It is the assignee's burden to prove that it falls
within the exception to liability.  See Cazares v. Pacific Shore Funding, 2006 WL
149106, at *7 (C.D. Cal. Jan. 3, 2006); Cooper v. First Government Mortgage and
Investors Corp., 238 F. Supp.2d 50, 56 (D.D.C. 2002); Rodrigues v. U.S. Bank (In re
Rodrigues), 278 B.R. 683, 688 (D.R.I. 2002).

At this stage of the proceeding, Debtor's allegation that her mortgage is covered
by HOEPA must be accepted as true.  Wells Fargo acknowledges the same in its
amended reply brief.  See Wells Fargo's Amended Reply Brief in Support of Motion to

---

[4] The parties disagree on the meaning of the phrase "any other disclosure
disbursement."  Debtor contends that the phrase should be broadly interpreted to include "the
HUD-1 Settlement Sheet, the mortgage and note, as well as any other records, such as
cancelled checks, showing the amounts paid for the yield spread premium, the settlement fee
to the settlement agent, the appraisal fee, the actual cost of title insurance, any broker fee
disclosures and any other forms, receipts or invoices which underlie or establish the actual
amounts included in the Amount Financed and the Finance Charge ultimately disclosed on the
Truth-in-Lending form."  Debtor's Brief at 15-16.  Wells Fargo, on the other hand, contends that
the phrase should be narrowly circumscribed to include only the HUD-1 and the mortgage.  At
this juncture of the proceeding, it is unnecessary for the Court to resolve this issue.  Until
discovery has been exchanged and Debtor identifies the documents, if any, which prove her
contention that certain charges were improperly included in the Amount Financed rather than
the PrePaid Finance Charges or the Points and Fees, a ruling on the parties' dispute would
merely be an advisory opinion. "'The oldest and most consistent thread in the federal law of
justiciability is that federal courts will not give advisory opinions.'"  Coffin v. Malvern Federal
Savings Bank, 90 F.3d 851, 853 (3d Cir. 1996) (quoting 13 Wright, Miller, Cooper, Federal
Practice and Procedure, § 3529.1, p. 293 (2d ed. 1984)).

Dismiss at 9.  Furthermore, Wells Fargo has not shown that it falls within the exception

to liability set forth in § 1641(d)(1).  It hasn't yet had an opportunity to make such a

showing.  Therefore, Wells Fargo's argument for dismissing Debtor's claim in Count II

lacks merit.


## III.    Debtor's TILA claim for Rescission


**_A borrower's right to rescind under TILA_**
**_and the expiration of such right._**

When a loan made in a consumer credit transaction is secured by the borrower's

principal dwelling, TILA grants the obligor the right to rescind the transaction "until

midnight of the third business day following the consummation of the transaction."  15

U.S.C. § 1635(a).  This time period can be extended to three years after consummation

of the transaction if the lender fails to satisfy the disclosure requirements imposed by

TILA.  Id. & 15 U.S.C. § 1635(f).  However, the right ends at the expiration of the three

year period pursuant to 15 U.S.C. § 1635(f).  This subsection states, in relevant part:

> An obligor's right of rescission shall expire three years after
> the date of consummation of the transaction or upon the
> sale of the property, whichever occurs first, notwithstanding
> the fact that the information and forms required under this
> section or any other disclosures required under this part
> have not been delivered to the obligor[.]

11 U.S.C. § 1635(f).

In Beach v. Ocwen Federal Bank, 523 U.S. 410 (1998), the Supreme Court ruled

that an obligor's right to rescind under TILA is completely extinguished at the end of the

three year period.  The Supreme Court stated: "[T]he Act permits no federal right to

rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run."  Id. at

419.


### Whether Debtor's claim for rescission is time-barred?

Debtor's loan transaction closed on February 7, 2002.  She allegedly sent

notification that she was rescinding the loan on October 31, 2003.  However, she did

not file this action until February 1, 2008, which was more than five years after the date

upon which her loan closed and more than four years after she sent her notice of

rescission.

Wells Fargo contends that Debtor's claim in Count III to enforce her right to

rescission under TILA is time-barred because Debtor did not commence this adversary

proceeding within three years of her loan closing.  Debtor asserts that she complied

with the three year time limit in § 1635(f) because she formally rescinded the loan on

October 31, 2003 even though Wells Fargo rejected her rescission demand.  Complaint

¶¶ 66-67.

Section 1635(a) is the subsection of TILA that authorizes rescission.  This

subsection states, in relevant part:

> Except as otherwise provided in this section, in the case of
> any consumer credit transaction (including opening or
> increasing the credit limit for an open end credit plan) in
> which a security interest, including any such interest arising
> by operation of law, is or will be retained or acquired in any
> property which is used as the principal dwelling of the
> person to whom credit is extended, the obligor shall have the
> right to rescind the transaction until midnight of the third

14

> business day following the consummation of the transaction
> or the delivery of the information and rescission forms
> required under this section together with a statement
> containing the material disclosures required under this
> subchapter, whichever is later, <u>by notifying the creditor, in</u>
> <u>accordance with regulations of the Board, of his intention to</u>
> <u>do so.</u>

11 U.S.C. § 1635(a) (underlining added).  Regulation Z expands on the notification

requirement for closed-end credit transactions, providing:

> To exercise the right to rescind, the consumer shall notify
> the creditor of the rescission by mail, telegram or other
> means of written communication.  Notice is considered given
> when mailed, when filed for telegraphic transmission or, if
> sent by other means, when delivered to the creditor's
> designated place of business.

12 C.F.R. § 226.23(a)(2).  The plain language of § 1635(a) and 12 C.F.R.

§ 226.23(a)(2) suggests that a consumer or obligor exercises his or her right to

rescission by written notice.  Based on the allegations in the Complaint, Debtor

exercised her right to rescission on October 31, 2003 which was within the three year

time limit set forth in § 1635(a).  However, she did not file the instant adversary

proceeding to enforce her right to rescind until four years later.  Is her suit for rescission

time-barred because it was filed beyond the three year period set forth in § 1635(f)?

     In <u>Madura v. Countrywide Home Loans, Inc.</u>, 2008 WL 2856813 (M.D. Fla.

July 22, 2008), the district court observed that two schools of thought have emerged on

the aforementioned issue.  Under one approach, so long as a consumer has timely

exercised her right to rescind, her suit for rescission is not time-barred even if it was

filed after the period set forth in § 1635(f).  <u>Id</u>. at *13.  Under the other approach, the

consumer must file her suit for rescission within the three year period set forth in

§ 1635(f); otherwise, the suit is time-barred regardless of whether she provided a timely notice to rescind.  Id.  Based on the Third Circuit's decision in Smith v. Fidelity Consumer Discount Company, 898 F.2d 896 (3d Cir. 1990), the Third Circuit follows the latter approach.

In Smith, the plaintiffs, who were the successors in interests to John Coplin, sought to rescind a loan transaction into which he entered on October 31, 1984, by sending a rescission notice to the creditor on November 3, 1986.  898 F.2d at 902.  The creditor refused to allow them to rescind and plaintiffs commenced an action seeking both rescission and statutory damages.  Id.  Addressing whether the plaintiffs' claim for rescission was timely, the Third Circuit ruled that it was since they had filed their action within the three year time period set forth in 15 U.S.C. § 1635(f).  Id. at 903.  In so ruling, the Third Circuit specifically stated that under § 1635(f) "a borrower has three years after the date of consummation of the transaction to *bring an action for rescission*."[5]  Id.  In a case decided fifteen years after Smith, the Third Circuit reiterated the same view stating: "[A]n action for rescission must be brought within three years." In re Community Bank of Northern Virginia, supra, 418 F.3d at 305.  See also Jefferies v. Ameriquest Mortgage Co., 543 F. Supp.2d 368, 383 (E.D. Pa. 2008) (concluding that plaintiff's rescission claim was timely because it was filed within the "three-year

---

[5]  In contrast to a claim for rescission, a claim for damages for a defendant's failure to honor a request for rescission is subject to the one year statute of limitations set forth in 15 U.S.C. § 1640(e).  The one year period begins to run on the date by which the defendant was required to respond to the notice of rescission.  See Lavelle v. M & T Mortgage Corporation, 2006 WL 2346320, at *3 (E.D. Pa. Aug. 11, 2006).  However, as noted in § 1640(e), the one year statute of limitations "does not bar a person from asserting a violation of this subchapter in an action to collect the debt . . . as a matter of defense by recoupment or set-off in such action[.]"  15 U.S.C. § 1640(e).

limitations period for actions seeking rescission."); Christopher v. First Mutual Corp.,

2007 WL 2972561, at *3 (E.D. Pa. October 9, 2007) (ruling that consumer's claim for

rescission was not timely since it was not filed within three years of the date upon which

the loan was consummated); Kamara v. Michael Funding, LLC, 379 F. Supp.2d 631,

634 (D. Del. 2005) (concluding that claim for rescission was time-barred even assuming

that plaintiff attempted to rescind the mortgage within three days following

consummation of the loan transaction in October of 1998 since he did not file suit until

June of 2004); Steele v. Chase Manhattan Mortgage Corp., 2005 WL 2077271, at *2

(E.D. Pa. August 26, 2005) ("[A] borrower may file an action for rescissory relief under

the TILA within three years of the consummation of the challenged loan transaction

where the borrower properly exercised her right to rescind within the initial three-day

period under § 1635(a) and the lender has failed to honor the rescission."); Nix v.

Option One Mortgage Corporation, 2006 WL 166451 (D.N.J. Jan. 19, 2001) (dismissing

claim for rescission as time-barred where plaintiff, who allegedly notified defendant

within three days following consummation of the loan transaction that he was exercising

his right to rescission, did not file an action asserting claim for rescission until after the

three year period set forth in § 1635(b)).  But see Johnson v. Chase Manhattan Bank,

2007 WL 2033833, at *4 (E.D. Pa. July 11, 2007) (reasoning that if plaintiff notified

creditor of desire to rescind on January 26, 2006 for transaction that occurred on

January 25, 2005, plaintiff "acted well within the permissible time period" to rescind);[6]

Jackson v. CIT Group/Consumer Finance, Inc., 2006 WL 3098767, at *2 (W.D. Pa.

---

[6]  In Johnson, the plaintiff's action for rescission was obviously commenced prior to the date of the district court's decision which was July 11, 2007 so even under the Third Circuit's ruling in Smith, the plaintiff's claim for rescission was timely.

Oct. 30, 2006) (ruling that since plaintiff's notice to rescind was sent in October of 2003

which was within the three year period set forth in § 1635(f), plaintiff's action seeking a

declaratory judgment that the transaction was rescinded was timely even though the

creditor had rejected plaintiff's written notice of rescission and the suit was not filed until

March of 2006.)

Since the loan transaction in the instant case occurred on February 2, 2002,

Debtor's right to rescind, whether asserted affirmatively or by recoupment, expired and

was extinguished on February 2, 2005.  Based on the aforementioned Third Circuit

precedent, Debtor's claim for rescission in Count III is time-barred because this

adversary proceeding was not commenced until February 1, 2008.


**IV.   Whether Counts IV, V, VI and VII must be
dismissed as against Wells Fargo for
failure to state a claim upon which relief
can be granted since the conduct of SMB
(the mortgage broker), Capital (lender's
closing agent) and Levin Law Firm (closing
agent's lawyer) cannot be imputed to Wells
Fargo?**

In Counts IV and V, Debtor asserts claims for common law fraud and/or unlawful

conduct under the Pennsylvania Unfair Trade Practices and Consumer Protection Law

("UTPCPL"), 73 P.S. § 201-1 *et seq.*  Count IV is based on the alleged conduct of SMB;

Count V is based on the alleged conduct of Capital and its attorney, Levin.

In Counts VI and VII, Debtor asserts claims for breach of a confidential

relationship or fiduciary duty.  Count VI is based on the alleged confidential relationship

18

between Debtor and SMB; Count VII is based on the alleged confidential relationship

between Debtor, Capital (the lender's closing agent) and Capital's attorney, Levin.

Wells Fargo contends that Counts IV through VII should be dismissed because it

cannot be held liable, as the assignee of Delta Funding, for the conduct of: (i) Debtor's

mortgage broker, SMB; (ii) the closing agent, Capital, or (iii) the closing agent's lawyer,

Levin.  A review of the Complaint reveals that Counts IV and VI do not even mention

Wells Fargo.  Accordingly, the Court concludes that these counts are directed solely

against SMB and not against Wells Fargo.[7]  In contrast, Counts V and VII specifically

refer to Wells Fargo alleging that as "assignee of the loan, Wells Fargo is liable for all

claims which [the Debtor] has against the loan originator."  <u>See</u> Complaint ¶¶  94, 116.


### *Whether Count V should be dismissed?*

In Count V, Debtor alleges that Delta Funding, through its closing agent, Capital,

based on the conduct of its attorney, Levin, "induced the Plaintiff to enter into a grossly

one-sided, overpriced and disadvantageous loan transaction."  <u>Id</u>. ¶ 84.  In support of

this allegation, Debtor avers that Levin told Debtor that he was present at the closing to

protect her interests and then: (i) failed to inform her that consolidating and refinancing

---

[7]  Notably, paragraph D of Debtor's prayer for relief asserts that "[p]ursuant to 73 P.S.
§ 201-9-2 and the common law, [SMB] is liable for actual, statutory and punitive damages for its
violations of the [UTPCPL], as well as for violations of its fiduciary duty to the Plaintiff, these
damages should be set off against the amount of any allowed secured claim held by Wells
Fargo."  However, Debtor offers no basis for setting off the damages for which SMB may be
liable against Wells Fargo's claim.  It should also be noted that a "prayer for relief is not part of
the cause of action[.]"  <u>Cassidy v. Millers Casualty Insurance Company of Texas</u>, 1 F. Supp.2d
1200, 1214 (D. Colo. 1998).   "[T]he test of a complaint pursuant to a motion to dismiss lies in
the claim, not in the demand[.]"  <u>Id</u>.

her preexisting debts would be financially disadvantageous to her and could increase the likelihood that she would lose her home in foreclosure; (ii) failed to inform her of the existence and nature of the yield spread premium; (iii) failed to inform her that her monthly payments would not decrease after she made one year of timely payments or that such a decrease was not reflected in the loan documents which she was being asked to sign; and (iv) failed to inform her that her interest rate would not decrease after she made one year of timely payments or that such a decrease was not reflected in the loan documents which she was being asked to sign. Id. ¶¶ 85-89. Plaintiff contends that Levin's conduct constitutes common law fraud or an "unfair or deceptive practice" within the meaning of the UTPCPL and that Delta Funding is liable for such conduct since Capital was acting as its agent and Levin was acting as Capital's agent. Id. ¶ 91. Plaintiff further asserts that, pursuant to § 1641(d)(1), Wells Fargo, as the assignee of a HEOPA loan, is liable on this claim the same as Delta Funding would be.

Wells Fargo contends that Count V should be dismissed against it because it cannot be held liable for the actions of Levin.[8] The Court is unpersuaded by this argument.

As discussed above, unless a HOEPA mortgage assignee fits within the limited exception set forth in § 1641(d)(1), the assignee is subject to "all claims and defenses with respect to the mortgage that the consumer could assert against the creditor of the

---

[8] Wells Fargo also asserts that Plaintiff's claim for fraud is time-barred because 42 Pa.C.S. § 5524(7) provides a two year statute of limitations for fraud. This argument would have merit if Plaintiff was seeking affirmative damages against Wells Fargo. However, based on the allegations of her Complaint, she is seeking to recover actual and punitive damages for fraud by way of recoupment only. See Complaint ¶ 2.

mortgage." 11 U.S.C. § 1141(d)(1).  Plaintiff has alleged that her loan from Delta was

within the scope of HOEPA, Capital was acting as Delta's agent at the closing and that

Levin was acting as Capital's agent.  If Plaintiff succeeds in establishing these

allegations at trial and also that Capital, through Levin, committed fraud or violated the

UPTCPL,[9] then Wells Fargo could be held liable on Plaintiff's claim as Delta's assignee

pursuant to § 1641(d)(1).  See Barber v. Fairbanks Capital Corp., 266 B.R. 309, 320

(Bankr. E.D. Pa. 2001) (holding that § 1641(d)(1) subjected the original lender's

assignee to cause of action which mortgagee could assert under the UTPCPL against

the original lender).  Based on § 1640(d)(1), it will be Wells Fargo's burden to establish

that a reasonable person exercising due diligence could not have determined, by

reviewing the items listed in § 1641(d)(1), that the mortgage was subject to HOEPA.

See Short v. Wells Fargo Bank, 401 F. Supp.2d 549, 555 (S.D. W.Va. 2005) (observing

that an assignee may raise as a defense to assignee liability under § 1641(d)(1) that it

was without notice that the loan in question was a HOEPA loan.").  Therefore, Count V

shall not be dismissed.

---

[9]  Under the law of Pennsylvania, "there are three basic elements necessary to establish
a principal-agent relationship: (1) manifestation by a principal that an agent shall act for the
principal; (2) the agent's acceptance of the undertaking; and (3) the parties' understanding that
the principal is to be in control of the undertaking."  Basile v. H & R Block, Inc., 563 Pa. 359,
367, 761 A.2d 1115, 1120 (Pa. 2000).  A closing attorney can act as a lender's agent.  See
Hickey v. Great Western Mortgage Corporation, 1995 WL 153372, at *4 (N.D. Ill. 1995)
(concluding that there was sufficient evidence in the record to "create a genuine issue of
material fact" as to whether the closing attorney acted as the lender's agent); Clients' Security
Fund v. Security Title and Guaranty Company, 134 N.J. 358, 374, 634 A.2d 90, 97 (N.J. 1993)
(ruling that closing attorney was the agent of the lender).  In Aiello v Ed Saxe Real Estate, Inc.,
508 Pa. 553, 562, 499 A.2d 282, 287 (1985), the Pennsylvania Supreme Court reaffirmed the
"longstanding and widely held rule of law that a principal is liable to innocent third parties for the
frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances
or misfeasances of his agent committed during the course of his employment" even though the
principal did not authorize, participate or even know of the misconduct.

***Whether Count VII should be dismissed?***

In Count VII, Plaintiff contends that she placed particular trust and reliance on

Capital, through its agent Levin, because: (i) it had substantially more knowledge and

sophistication than Plaintiff; (ii) Levin represented that he was an attorney and was

present at the closing to protect Plaintiff's interests; and (iii) she is visually impaired

and, therefore, could not read the loan documents.  See Complaint ¶¶ 107-08.  Plaintiff

further alleges that since Capital, through Levin, had "substantial ability and opportunity"

to compel her to accept the terms of the loan, a confidential relationship existed

between Capital and herself which gave rise to a concomitant fiduciary duty requiring

Capital to act affirmatively in her interest and not for its own personal gain.  Id. ¶¶ 109-

10.  According to Plaintiff, Capital, through its agent Levin, breached this duty by:

(i) inducing her to enter into a "grossly one-sided, overpriced and disadvantageous

loan; (ii) misrepresenting that Levin was at the closing to protect Plaintiff's interest when

he was there on behalf of Capital only; (iii) failing to inform Plaintiff that the

consolidation and refinancing of her existing debts was financially disadvantageous to

her; (iv) failing to inform Plaintiff of the existence and nature of the yield spread

premium; (v) failing to inform Plaintiff that her monthly payment would not decrease

after she made one year of timely payments or that the decrease was not reflected in

the loan documents which she was being asked to sign; and (iv) failing to inform her

that her interest rate would not decrease after she made one year of timely payments or

that the decrease was not reflected in the loan documents which she was being asked

to sign.  Id. ¶ 112.  Plaintiff seeks to hold Wells Fargo, as the assignee of Delta

Funding, for the conduct of its agent, Capital, acting through its agent, Levin, in allegedly breaching its fiduciary duty to her.

As with Count V, Wells Fargo contends that Count VII should be dismissed because it cannot be held liable for Levin's misconduct.  Again, the Court disagrees.  Plaintiff has stated a claim for breach of fiduciary duty against Wells Fargo based on its principal/agency relationship with Capital and its principal/agency relationship with Levin whom Plaintiff alleges breached his fiduciary duty to her.  Under the assignee liability provision for HOEPA loans, Wells Fargo can be held subject to all claims that can be asserted against Delta.

Under Pennsylvania law, "a confidential relationship and the resulting fiduciary duty may attach 'whenever one occupies towards another such a position as advisor or counsellor [sic] as reasonably to inspire confidence that he will act in good faith for the other's interest.'"  Basile v. H & R Block, Inc., 777 A.2d 95, 101-02 (Pa. Super. 2001) (quoting Biddle v. Johnsonbaugh, 444 Pa. Super. 450, 664 A.2d 159 (Pa. Super. 1995) (quoting Brooks v. Conston, 356 Pa. 69, 51 A.2d 684, 688 (1947))).  See also In re Estate of Clark, 467 Pa. 628, 359 A.2d 777 (1976) (observing that a confidential relationship exists when a person reposes special confidence in another to the extent that they do not deal with each other on equal terms, either because of "overmastering dominance on one side, or weakness, dependence or justifiable trust on the other.").

Plaintiff has alleged that Levin told her that he was an attorney and that he was at the closing to protect her interest.  These allegations, coupled with the allegations regarding Plaintiff's blindness, the allegations that Levin told Plaintiff that the loan was reasonable and suitable for her and the allegations that Levin omitted to advise Plaintiff

regarding relevant information about the loan are sufficient at this phase of the litigation

to support Plaintiff's claim that Levin breached his fiduciary duty to Plaintiff.  Count VII

of the Complaint shall not be dismissed.


## **SUMMARY**

Wells Fargo's Motion shall be granted in part and denied in part.  Count III of the

Complaint shall be dismissed; Counts IV and VI of the Complaint shall be dismissed

only as against Wells Fargo.

An Order to this effect shall be issued.


Dated:  October 16, 2008.

_____
JEAN K. FITZSIMON
United States Bankruptcy Judge